WILLIAM F. JOBBINS, Inc., v. KENDALL MFG. CO.

(Circuit Court, D. Rhode Island. January 18, 1911.)

No. 2,923.

PATENTS (§ 211*)—LICENSES--CONSTRUCTION OF CONTRACT.

Plaintiff and defendant entered into a contract, reciting that plaintiff was the owner of patents for a process and machinery for producing commercially refined (nitro) glycerine from waste soap lyes and that defendant was a producer of such waste soap lyes. The contract granted to defendant the right to use such machinery and process during the life of the patents, on payment of royalties, and further provided that if defendant should, before the expiration of the patents, "discontinue the use of the said first party's within-named process for any other," it should pay to plaintiff a stipulated sum in lieu of future royalties. De-

fendant discontinued the use of plaintiff's process, and adopted a new process for extracting the glycerine from the original fats before saponification, and in consequence did not produce any waste soap lyes. *Held,* that the subject-matter of the contract was the treatment of waste soap lyes, and that, as it contained no provision requiring defendant to continue the production of such lyes, it did not by the substitution of the process, which did away with such production, discontinue the use of plaintiff's process for treatment of such lyes for any other, within the meaning of the contract, and was not liable under such provision.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 304–311; Dec. Dig. § 211.*]

At Law. Action by William F. Jobbins, Incorporated, against the Kendall Manufacturing Company. Trial to court. Judgment for defendant.

Henry W. Hayes, for complainant.
Gardner, Pirce & Thornley, for defendant.

BROWN, District Judge. This is an action of covenant, in which jury trial was waived. The written instrument under seal, bearing date April 19, 1892, contains an agreement between Jobbins and Van Ruymbeke, manufacturing chemists, of Aurora, Kane county, Ill., and the Kendall Manufacturing Company, a Rhode Island corporation doing business at Providence, R. I. It recites in substance that:

Jobbins and Van Ruymbeke are inventors of a new chemical and distilling process, and of machinery adapted thereto, for producing commercially refined (nitro) glycerine from waste soap lyes, and have United States letters patent issued them therefor, to wit, Nos. 458,647 and 458,648, both dated September 1, 1891; that the defendant is a producer of waste soap lyes, and desires such machinery as will have capacity to operate the waste soap lyes resulting from the daily use of 17,000 pounds of tallow or other oleaginous material, producing therefrom the glycerine and salt contained; also to acquire the right to use such patented machinery and process as aforesaid for the utilization of such waste soap lyes as may be produced by them.

The contract contains somewhat elaborate provisions concerning the erection of machinery and terms of payment, with the detail of which we need not concern ourselves. It provides, also, that all of the waste soap lyes produced at defendant's works shall be treated by this said process by the defendant during the life of the patents and of all patented improvements or modifications thereof. The owners of the patents agree during the continuance of the license to protect the defendant against actions for infringement.

The contract contains no agreement, however, binding the defendant to continue the production of waste soap lyes. It was doubtless contemplated by both parties that the defendant, in the usual course of its manufacture of soap, would produce waste soap lyes, which it would be advantageous for it to treat by this process for obtaining the glycerine, etc., therefrom. The important provision is as follows:

"But if they, the said second party [the Kendall Manufacturing Company], should at any time prior to the 1st of September, 1908, A. D., discontinue the use of the said first party's within-named process for any other, that then they, the said second party, shall to the said first party pay such sum as, together with the royalty heretofore paid, will equal the gross sum and inter-

est they would have paid in the net value of the glycerine and salt produced from the lyes resulting from the use of 5,000,000 pounds of tallow or other oleaginous materials in lieu of which said royalty was accepted, as per clause 5 thereof."

The declaration alleges that the defendant did, prior to the 1st of September, 1908, discontinue the use of said process for another, and avers that by reason of said discontinuance of said process it became liable to the plaintiffs for the gross sum and interest set forth.

Upon the trial it was proved that the defendant, prior to September 1, 1908, did discontinue the use of the plaintiff's process and adopted a new process, known as the "Twitchell Process," which is a process of extracting glycerine from the original fats before they have been submitted to the process of saponification, and is not a process of extracting glycerine from waste soap lyes. As the entire agreement relates to a process and machinery for the treatment of waste soap lyes, and as the defendant discontinued the production of waste soap lyes, the situation is exactly the same as if the defendant had entirely gone out of business, as it had the right to do. While both parties contracted in the expectation of the probable continuance of the defendant's business, and of the use of soap-making processes which would involve the production of waste soap lyes, yet I am unable to find anything in the agreement which bound the defendant either to continue in the business of soap-making or to conduct its business of soap-making in such way as to produce as a by-product waste soap lyes. There is nothing in the business situation which makes it necessary for the defendant, in order that the patentees may receive royalties, to continue the use of the process or machinery, if, in the course of the development of the soap-making art, a new process should be adopted which did not involve the production of the particular by-product which the plaintiff's process was designed to treat. In the expression "discontinue the use of the said first party's withinnamed process for any other," the words "for any other" must be given their due effect.

The subject-matter concerning which the parties are contracting is a process for producing glycerine from a particular material—i. e., waste soap lyes—and the words "for any other" must be held to mean for any other process for producing glycerine from waste soap lyes. The contract clearly does not mean that merely upon the discontinuance of the process a gross sum should be payable, for if it did the words "for any other" would be superfluous; and it cannot be interpreted to mean for any process of extracting glycerine from tallow and other oleaginous materials without unduly extending the terms of the contract. The patentees have made provision for the payment of a gross sum upon the discontinuance of their process and the adoption of another process for treating waste soap lyes; but they have entirely failed to provide for the contingency that the defendant corporation might so change its mode of conducting business as to dispense with the production of waste soap lyes, and consequently with the use of any process for their treatment.

184 F.—30

I am, therefore, of the opinion that, though the plaintiff has proved a discontinuance of the use of the patented process, it has failed to show that this was discontinued with the intent to adopt any other process for treating waste soap lyes, or that any other process for this purpose has been used by the defendant corporation.

Both plaintiff and defendant have preferred formal requests for findings of law and fact. I find as follows:

### Findings of Fact.

1. I find the due execution of the said instrument in writing declared upon, and that the plaintiff has succeeded to the rights of Jobbins and Van Ruymbeke thereunder.

2. The defendant did not at any time prior to September 1, 1908, discontinue the use of the plaintiff's process of extracting commercially refined glycerine from waste soap lyes for any other as in the plaintiff's declaration alleged, but did at some time prior to September 1, 1908, discontinue the use of the plaintiff's said process and adopt for the production of glycerine the Twitchell process, so called, which Twitchell process is a process of extracting glycerine from the original fats before they have been submitted to the process of saponification, and is not a process of extracting glycerine from waste soap lyes.

3. The defendant did not become liable to pay the plaintiff any sum by reason of its discontinuance of the plaintiff's said process for another, as in the plaintiff's declaration alleged.

### Findings of Law.

1. The agreement between the parties, which is the subject of this action, is a covenant and specialty, and therefore the plaintiff has properly sued in an action of covenant.

2. The words in the contract between the parties declared upon, "if they, the said second party, should at any time prior to the 1st of September, 1908, A. D., discontinue the use of the said first party's within-named process for any other," taken in connection with the other language of the contract, mean and refer to a discontinuance of the plaintiff's said process for another process of extracting commercially refined glycerine from waste soap lyes, and do not mean or refer to a discontinuance of the plaintiff's said process for a process of extracting glycerine from the original fats before they have been submitted to the process of saponification.

The plaintiff's second request for finding of law is denied. The plaintiff's first and second requests for findings of fact are denied.

Judgment will be entered for the defendant.